UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ROY L. DENTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:07-CV-211 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| STEVE RIEVLEY ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Before the Court is *pro se* Plaintiff Roy L. Denton's motion for partial summary judgment (Court File No. 20), along with his memorandum in support (Court File No. 21), Defendant Steve Rievley's response in opposition (Court File No. 29), and Plaintiff's reply (Court File No. 31). Having considered the parties' briefs, the evidence, and the applicable law, the Court will **DENY** Plaintiff's motion for partial summary judgment (Court File No. 20).

## **I. RELEVANT FACTS**

On summary judgment, the Court views the facts in the light most favorable to the non-moving party, which is the defendant.

According to Defendant's affidavit, he is a police officer, and was working an overnight shift when he was dispatched about a domestic violence incident. Defendant spoke to Plaintiff's son, Brandon Denton, who said he was attacked by his father (Plaintiff) and brother. Defendant observed red marks on Brandon's neck consistent with strangulation and abrasions on his arms and forehead. Defendant also spoke with a coworker of Brandon who informed the officer that Brandon did not have those injuries earlier that evening. Brandon told Defendant his father and brother remained at

their home.

Defendant drove to the home. He walked to the door to ask Plaintiff about Brandon. According to Plaintiff's brief, Plaintiff saw lights outside and opened his front door to investigate, at which point he saw Defendant coming to his front porch.[1] According to Defendant, on the front porch Defendant saw Brandon's broken eyeglasses, which were consistent with Brandon's account. He also smelled alcohol on Plaintiff. Defendant decided to arrest Plaintiff for domestic assault and informed Plaintiff he was under arrest. After a short discussion, Plaintiff "turned away from [Defendant] toward the door of his house." As Plaintiff turned away, Defendant grabbed Plaintiff's right arm, which Defendant handcuffed, and then Defendant handcuffed Plaintiff's left arm.

In his brief, Plaintiff writes that after he opened the door, Defendant asked about Plaintiff's son. Plaintiff "then turned away from [Defendant] and attempted to shut and lock his door. As [Plaintiff] was attempting to close the front door and lock it, [Defendant] handcuffed his right arm and then managed to handcuff his other arm together."

## II. STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the

---

[1]Accompanying Defendant were two other officers who are not parties to this case.

non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Plaintiff argues he is entitled to summary judgment because Defendant made a warrantless arrest of him inside his house without consent or exigent circumstances. Defendant argues the arrest was proper under Tennessee law.

The Fourth Amendment to the U.S. Constitution guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Under 42 U.S.C. § 1983, a plaintiff may seek money damages from a government official who violates his Fourth Amendment rights. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Defendant argues his actions were proper under Tenn. Code Ann. § 36-3-619, which he contends allows police officers to make arrests for misdemeanor domestic abuse cases without a warrant. Plaintiff has not argued his arrest was improper under state law, and Defendant's

contention is irrelevant to the constitutional question at issue here. If an action is prohibited by the Fourth Amendment, a state law cannot permit it. *Cf. Virginia v. Moore*, 128 S. Ct. 1598 (2008) (holding a police officer does not violate the Fourth Amendment merely because an arrest is prohibited by state law, and rejecting the idea of "linking Fourth Amendment protections to state law"). Because actions under § 1983 concern violations of federal rights, an officer's compliance with a state statute does not defeat a § 1983 action. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Lewellen v. Metropolitan Gov't*, 34 F.3d 345, 347 (6th Cir. 1994); *Wagner v. Higgins*, 754 F.2d 186, 190 (6th Cir. 1985) (quoting *Cooper v. California*, 386 U.S. 58, 61 (1967)) ("The question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment.").

Plaintiff alleges Defendant unlawfully arrested him in his house in violation of the Fourth Amendment.[2] The Supreme Court has held "the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980) (internal citations omitted). That reasoning also applies to misdemeanors. *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 689 (6th Cir. 2006). In *Payton*, police officers broke into an apartment to arrest a suspect. Without consent or exigent circumstances, such a warrantless intrusion into the home is unconstitutional.

---

[2]Plaintiff alleges the intrusion into his home to arrest him was unlawful, not that the arrest without a warrant would have been unlawful if it occurred outside the home. There is no constitutional requirement that police obtain a warrant to arrest a person on a misdemeanor. *Soltesz v. City of Sandusky*, 49 F. App'x 522, 526 (6th Cir. 2002); 3 Wayne R. Lafave, Search and Seizure § 5.1(b) (3d ed. 1996) (The Supreme Court "has never held that a warrant for lesser offenses occurring out of the presence of an officer is constitutionally required.").

4

443 U.S. at 590; *Duncan v. Jackson*, 243 F. App'x 890, 894 (6th Cir. 2007).

In contrast, warrantless arrests in public areas do not violate the Fourth Amendment. *United States v. Watson*, 423 U.S. 411, 414-16 (1976). Although *Payton* prohibited warrantless intrusions into the home, it does not prevent police from ever making a warrantless arrest of a person in his home. Homes are accorded sanctity under the Fourth Amendment because of the occupants' privacy interests. *Segura v. United States*, 468 U.S. 796, 810 (1984). In some circumstances, arrests in the home are permitted because a person has given up their privacy interest in their home. *See United States v. Santana*, 427 U.S. 38, 42 (1976) ("What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." (citing *Katz v. United States*, 389 U.S. 347, 351 (1967))). In *Santana*, police officers saw a suspect standing in the doorway of her house. *Id.* at 40. As officers approached the suspect, she retreated into her house; officers followed through the open door and captured her in the vestibule. *Id.* Noting that a warrantless arrest in a public place does not violate the Fourth Amendment, *Watson*, 423 U.S. at 411, the Supreme Court in *Santana* held the suspect was in a public place when she was standing in the doorway of her house. 427 U.S. at 42. The suspect "was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* Thus, arresting the suspect in the doorway would have been constitutional under *Watson*, and therefore it was constitutional for the officers in hot pursuit to arrest her in the vestibule. *Id.* at 42-43; *accord United States v. Saari*, 272 F.3d 804, 811 (6th Cir. 2001) (noting that voluntarily exposing oneself to the public eliminates *Payton*'s requirement of a warrant or exigent circumstances). In contrast, in *Cummings v. City of Akron*, the Sixth Circuit held police were liable for unlawfully entering a home without a warrant where the plaintiff never fully exposed himself

to public view and clearly indicated he did not want to be exposed to the public. 418 F.3d 676, 686 (6th Cir. 2005).

Plaintiff bears the burden of proving his constitutional rights were violated. Taking the evidence in the light most favorable to Defendant, Plaintiff opened his front door as Defendant approached. Defendant did not request or order Plaintiff to open the door. It is unclear where precisely Plaintiff was after he opened the door. Neither party expressly states Plaintiff was inside or outside his house. Defendant's account, which is credited for the purpose of this motion, states Plaintiff "turned away from me toward the door of his house." This implies Plaintiff was outside. Although Plaintiff's location is not crystal clear from Defendant's description, Plaintiff's description is no better. Although his motion states he was arrested in the house, his account of the facts does not state that he was still in the house or that the officer ever entered the house. Plaintiff states he "turned away from [Defendant] and attempted to shut and lock his door." This description also suggests Plaintiff was outside, but it is also not conclusive. Since Plaintiff bears the burden of proof, he is obligated to prove he was inside the house and he was arrested inside the house, which he has not done.

Regardless of Plaintiff's exact location, the evidence suggests Plaintiff knowingly exposed himself to the public view. *Santana*, 427 U.S. at 42. By opening the door for the officer and apparently stepping outside, Plaintiff put himself in a public place where Defendant could legitimately arrest him. Therefore, Plaintiff is not entitled to summary judgment on this issue.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will **DENY** Plaintiff's motion for partial summary

judgment (Court File No. 20).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**