UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ROY L. DENTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:07-CV-211 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| STEVE RIEVLEY ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Before the Court is Defendant Steve Rievley's motion for summary judgment (Court File No. 42) and *pro se* Plaintiff Roy L. Denton's motion for reconsideration of his motion for partial summary judgment (Court File No. 34). Having considered the parties' briefs, the evidence, and the applicable law, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Court File No. 42) and **DENY** Plaintiff's motion for reconsideration (Court File No. 34).

### **I. RELEVANT FACTS[1]**

Defendant is a police officer for the city of Dayton, Tennessee. He was working an overnight shift in the early morning hours of September 9, 2006 when he was dispatched to a domestic violence call at about 1:39 a.m. Brandon Denton, the son of Plaintiff, had gone to the local jail to make a complaint about his father (Plaintiff) and brother (Dustin Denton).

---

[1] These facts are drawn from Plaintiff's affidavit (Court File No. 36) and accompanying exhibits (Court File No. 36-2) and his exhibits accompanying his response to the summary judgment motion (Court File No. 44-2), and Defendant's two affidavits (Court File No. 21-3 and No. 29-2).

According to Defendant, Brandon informed him he worked at a local Taco Bell until midnight. Sometime after midnight, his friend and coworker gave him a ride to his father's house. According to the affidavit of complaint, Dustin started hitting Brandon and broke his eyeglasses. Brandon told Defendant that Plaintiff became involved in the fight, and grabbed Brandon around the neck, strangling him. Defendant observed red marks on Brandon's neck consistent with strangulation and abrasions on his arms and forehead. Defendant called Brandon's coworker, who told him Brandon did not have any injuries or abrasions when she had dropped him off at the house sometime after midnight. Plaintiff denies attacking Brandon, and the criminal charges arising from this incident were apparently dismissed.

Defendant drove to Plaintiff's home, accompanied by two or three other officers, none of whom is a party to this case. Defendant walked to the door and saw a pair of broken eyeglasses on the front porch. Plaintiff, who was dressed for bed wearing only silk sleeping shorts, opened the door. Plaintiff states he was standing three feet inside his home and "never crossed the threshold stepping onto the porch at any time." Defendant testified via affidavit for this case he asked Plaintiff if he had a son named Brandon, and Plaintiff replied he did not. Defendant wrote in his affidavit of complaint that he asked Plaintiff what happened with his son, and Plaintiff would not answer.

Defendant told Plaintiff he was under arrest. After a short discussion, in which Defendant asked about Dustin, Plaintiff turned away from the officers. Defendant grabbed Plaintiff's right arm, and handcuffed his right hand, and then managed to handcuff Plaintiff's left hand. Defendant then located Dustin in a bedroom in the house and arrested him.

## II. STANDARD OF REVIEW

2

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.  DISCUSSION**

In his amended complaint, Plaintiff alleges Defendant, acting under color of law, subjected him to an unreasonable search and seizure, deprived him of liberty without due process, used excessive force, and falsely arrested him. Plaintiff also alleges Defendant assaulted him, in violation of Tennessee common law, by "slapping a lit cigarette out of his mouth," forcibly grabbing

Plaintiff's arm and wrestling for his other arm. Defendant moves for summary judgment, contending he had probable cause to arrest Plaintiff, the warrantless arrest was proper, he did not use excessive force, he is protected by qualified immunity, and he cannot be sued for assault.[2]

The Fourth Amendment to the U.S. Constitution guarantees: " The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Under 42 U.S.C. § 1983, a plaintiff may seek money damages from a government official who violates his Fourth Amendment rights. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

**A.     False Arrest**

---

[2]Plaintiff states (Court File No. 46) that about eight pages of Defendant's memorandum appeared to be taken almost entirely verbatim from an opinion by District Judge Harry S. Mattice, Jr. in *Cannon v. Hamilton County*, No. 1:06-cv-79, 2007 WL 3238959 (E.D. Tenn. Nov. 1, 2007). Defense counsel responded (Court File No. 48) that the discussion of law and authority based on prior precedent is almost never the work of an attorney's own mind, but rather the work of the authoring judges. Furthermore, counsel states *Cannon* is directly on point, he modified the analysis to fit this case, and he even attached the case to his memorandum.

Although the memorandum twice cites *Cannon*, it does so for a single proposition, and it gives no indication that the text from *Cannon* is reprinted throughout the memorandum. Counsel's assertion that large amounts of text can be copied without attribution is incorrect. "While our legal system stands upon the building blocks of precedent, necessitating some amount of quotation or paraphrasing, citation to authority is absolutely required when language is borrowed." *United States v. Bowen*, 194 F. App'x 393, 402 n.3 (6th Cir. 2006). In *Bowen*, an attorney copied almost 20 pages from a district court decision, and did not cite the decision or in any way indicate the argument was lifted largely word for word. At oral argument, the Sixth Circuit panel called that behavior "completely unacceptable," and reiterated the criticism in its opinion "as an admonishment to all attorneys tempted to 'cut and paste' helpful analysis into their briefs." *Id. See also United States v. Lavanture*, 74 F. App'x 221, 224 n.2 (3d Cir. 2003) ("[I]t is certainly misleading and quite possibly plagiarism to quote at length a judicial opinion (or, for that matter, any source) without clear attribution."); *Velez v. Alvarado*, 145 F. Supp. 2d 146, 160-61 (D.P.R. 2001) (finding "intolerable" counsel copying large portion of district court opinion without any citation, despite adjustments to the facts); *In re Burghoff*, 374 B.R. 681, 685 (Bankr. S.D. Iowa 2007) (concluding that copying citations and synopses for dozens of cases without attribution was plagiarism).

By attaching *Cannon* and citing to it on two occasions, counsel was not trying to hide his reliance on *Cannon*. Nevertheless, counsel should have expressly indicated that a large portion of his brief was adopted from *Cannon*.

4

Defendant contends he had probable cause to arrest Plaintiff. Plaintiff disputes this, contending he was falsely arrested.

Under the Fourth Amendment, any arrest requires probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Gardenhire v. Schubert,* 205 F.3d 303, 315 (6th Cir. 2000). "In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008) (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). "The judicial determination of probable cause involves evaluating the historical facts leading up to the arrest, and whether those facts, viewed by an 'objectively reasonable police officer,' satisfy the legal standard of probable cause." *United States v. Moncivais*, 401 F.3d 751, 756 (6th Cir. 2005) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)) (internal citation and quotation marks omitted). The probable cause standard is a "nontechnical conception
that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U. S. 366, 370 (2003) (internal quotation marks omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

"A police officer has probable cause only when he discovers *reasonably reliable information* that the suspect has committed a crime." *Parsons*, 533 F.3d at 500 (emphasis in *Parsons*) (quoting *Gardenhire*, 205 F.3d at 318); *see also Fridley*, 291 F.3d at 827 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)) ("A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.'"). "[I]n obtaining such reliable information, an officer cannot look only at the evidence

5

of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Parsons*, 533 F.3d at 500 (quoting *Gardenhire*, 205 F.3d at 318). "Police officers may not 'make hasty, unsubstantiated arrests with impunity,' nor 'simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone.'" *Id.* at 501 (quoting *Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999)). However, the statement of a supposed victim can be enough to support probable cause. *See Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) (citing *Klein v. Long*, 275 F.3d 544, 551-52 (6th Cir. 2001)). In determining the existence of probable cause, the Court may "consider only the information possessed by the arresting officer at the time of the arrest." *Id.* at 501 (quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008)). The existence, *vel non*, of probable cause is a jury question, "unless there is only one reasonable determination possible." *Id.* (quoting *Fridley*, 291 F.3d at 872).

Defendant arrested Plaintiff for domestic assault in violation of Tenn. Code Ann. § 39-13-111. The statute prohibits people from committing an assault against a person in that person's family or household. The relevant definition of assault is a person who "[i]ntentionally, knowingly or recklessly causes bodily injury to another." *Id.* § 39-13-101(a)(1).

Defendant contends he had probable cause to make the arrest based on Brandon's statements to police, Defendant's interview with Brandon's coworker, and Defendant's observations of injuries on Brandon's body. Plaintiff contends Defendant lacked probable cause because he did not sufficiently investigate Brandon's allegations. Plaintiff contends any basic investigation into Brandon's allegations would have showed that Brandon had an outstanding warrant for felony theft

6

and was "widely known" in the community to not be credible. Although Plaintiff has submitted the arrest warrant into the record, there is no evidence in the record that Brandon is known to not be credible or that Defendant had reason to believe Brandon was not credible.

Considering the evidence, the only reasonable determination is that Defendant had probable cause to arrest Plaintiff for violating the domestic assault statute. From Defendant's interview with Brandon, he learned Brandon had been assaulted by Dustin and Plaintiff, people who live in his house and are related by blood. Plaintiff challenges the credibility of these statements, but does not dispute that Brandon made these statements to Defendant.[3] Plaintiff contends that further investigation would have exculpated him, but the only evidence Plaintiff supplies is that Brandon was wanted on a felony theft warrant for allegedly stealing from a convenience store in Hamilton County. The warrant gives no indication it would make Brandon a less credible accuser of his father and brother in Dayton, which is in Rhea County.

Defendant was able to corroborate most of Brandon's allegations. He saw marks and abrasions on Brandon's forehead, arms, and neck, consistent with the assault Brandon described.

---

[3]Plaintiff challenges the statements as hearsay and as not being within Defendant's personal knowledge. However, the statements are not hearsay because they are not being "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Unlike the state court proceeding at which the charges were apparently dismissed, the question here is not the truth of Brandon's allegations. Rather, this proceeding is concerned with what statements Brandon made to Defendant and what Defendant did based on those statements. Defendant has personal knowledge of the statements made to him and what he did in response to those statements. Probable cause is often based on police observations and reliable hearsay. *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989). To the extent Brandon made statements to other officers rather than just Defendant, those statements can still establish probable cause. *See id.* ("[P]robable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest."). Nor is it relevant to the probable cause determination that the criminal charges resulting from Plaintiff's arrest were apparently dismissed. *See Zantello v. Shelby Twp.*, 277 F. App'x 570, 572 (6th Cir. 2008); *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) ("A valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent.").

Defendant also interviewed Brandon's coworker, who told him Brandon did not have any injuries when she dropped him off at the house after midnight. Thus, it was reasonable for Defendant to conclude that Brandon suffered the injuries at the house, which corroborated Brandon's statement to Defendant that he was assaulted at the house. In addition, Defendant saw broken eyeglasses on the front porch of the house. Because Brandon had accused Dustin of breaking the eyeglasses, the broken eyeglasses do not specifically implicate Plaintiff, but they further corroborate Brandon's account of an assault taking place at the house. Given this evidence corroborating Brandon's account, it was reasonable for Defendant to rely on Brandon's accusation that his brother and father assaulted him. Therefore, Defendant had probable cause to arrest Plaintiff, and Plaintiff's false arrest claim must be dismissed.

  **B.** **Warrantless Entry**

Plaintiff contends Defendant unlawfully entered his house to arrest him and search his home. Defendant contends his arrest of Plaintiff was lawful or he is protected by qualified immunity, but does not address the subsequent search of the home.

    *1.* *Constitutionality of the Entry*

The Supreme Court has held "the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980) (internal citations omitted). That reasoning also applies to misdemeanors. *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 689 (6th Cir. 2006). In *Payton*, police officers broke into an apartment to arrest a suspect. Such warrantless entries are "presumptively unreasonable." *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir.

8

1996) (quoting *Payton*, 445 U.S. at 586). Because "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed . . . the warrant procedure minimizes the danger of needless intrusions of that sort." *Payton*, 442 U.S. at 585-86. Thus, police must generally obtain a warrant prior to entering a home unless there are exigent circumstances. *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003) (citing *Payton*, 442 U.S. at 585-86; *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). As these cases make clear, "[T]he Fourth Amendment has drawn a firm line at the *entrance* to the house." *Taylor v. Mich. Dep't of Natural Res.*, 502 F.3d 452, 456 (6th Cir. 2007) (emphasis in the original).

> The warrant requirement has at least three purposes:
>
> An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objectives and scope. A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case.

*United States v. Rohrig*, 98 F.3d 1506, 1514 (6th Cir. 1996) (quoting *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 621-22 (1989)).

Four years prior to *Payton*, the Supreme Court decided *United States v. Santana*, in which police officers saw a suspect standing in the doorway of her house. 427 U.S. 38, 40 (1976). As officers approached the suspect, she retreated into her house; officers followed through the open door and captured her in the vestibule. *Id.* Noting that a warrantless arrest in a public place does not violate the Fourth Amendment, *United States v. Watson*, 423 U.S. 411 (1976), the Supreme Court in *Santana* held the suspect forfeited any reasonable expectation of privacy by standing in the

9

doorway of her house. 427 U.S. at 42.[4] "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Id.* (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)). The suspect "was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* Thus, arresting the suspect in the doorway would have been constitutional under *Watson*, and therefore it was constitutional for the officers in hot pursuit to arrest her in the vestibule. *Id.* at 42-43.

Relying on *Santana*, the United States Court of Appeals for the Sixth Circuit has noted that voluntarily exposing oneself to the public eliminates *Payton*'s requirement of a warrant or exigent circumstances. *Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005). In *Cummings*, police were called to investigate a domestic disturbance. The alleged victim told the officers the perpetrator was at a nearby house. Officers went to the that house, opened the outside screen door, and knocked on the inside entry door. The plaintiff, who was not the perpetrator, came to a window from inside the home; the officers requested he come to the front door. The plaintiff partially opened the door and spoke briefly to the officers, during which time one officer placed his foot inside the doorway. One of the officers smelled marijuana inside the house and asked the plaintiff about it. At that point, the plaintiff attempted to close the front door, but the officer's foot blocked it. The officers pushed the door open and arrested the plaintiff. *Id.* at 679-80. Reviewing the plaintiff's unlawful entry claim, the Sixth Circuit held the plaintiff had "manifested his intent to keep the inside of his home private" by first attempting to talk to the officers through the window, then by only partially opening the door, and then by trying to shut the door before the officer attempted

---

[4]She was standing directly in the doorway—"one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." *Id.* at 40 n.1.

to arrest him. *Id.* at 685-86. *United States v. Saari* is also instructive. 272 F.3d 804 (6th Cir. 2001). Officers had responded to a "shots fired" call, but on arrival learned no shots had actually been fired. *Id.* at 806-07. Saari was in an apartment at the window with a pistol. Officers surrounded the only door to the apartment, knocked forcefully on it, and identified themselves as police. Defendant opened the door and stood in the doorway of the apartment. At gunpoint, the officers ordered him to step outside, and he complied. Relying on *United States v. Morgan*, 743 F.2d 1158 (6th Cir. 1984), the Sixth Circuit concluded the officers' conduct constituted a constructive entry and in-home arrest. *Saari*, 272 F.3d at 809. Although the officers were outside the apartment, it was Saari's location inside that mattered. *Id.* ("[T]he relevant inquiry is the location of the person being arrested, not the arresting officer.") (citing *Morgan*, 743 F.2d at 1166).

In this case, Defendant argues Plaintiff had stepped onto the porch when he was arrested. But the Court must view the evidence in the light most favorable to Plaintiff, who testified in his affidavit that he stood three feet inside his home and never stepped onto the porch. He also testified he was wearing nothing but silk sleeping shorts at the time Defendant came to the door, around 1:40 a.m. Construing this evidence in the light most favorable to Plaintiff, Plaintiff did not voluntarily expose himself to the outside. Unlike in *Santana*, Plaintiff was not in his doorway and was not even at the door voluntarily. According to his affidavit, he was ready for bed, opened the door in response to Defendant's arrival, and stayed inside the house a full three feet from the doorway. His location inside the home and his desire to avoid exposing himself to the outside prevented the police from arresting him without a warrant. If Plaintiff had chosen to exit the house or to allow Defendant into the house, he would have voluntarily forfeited his Forth Amendment right to not be arrested in his house without a warrant. But by exercising his rights, Plaintiff should not have been arrested

11

in his house without a warrant. "Police officers may not, in their zeal to arrest an individual, ignore the fourth amendment's warrant requirement merely because it is inconvenient." *Morgan*, 743 F.2d at 1164 (quoting *Johnson v. United States*, 333 U.S. 10, 15 (1948)).[5]

### 2. *Qualified Immunity for the Warrantless Entry*

Having determined there was a constitutional violation, the Court will consider Defendant's assertion that he is entitled to qualified immunity. *County of Sacramento*, 523 U.S. 833, 842 n.5; *Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007). Plaintiffs bear the burden of defeating qualified immunity, which is a legal issue to be decided by the Court. *Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier*, 533 U.S. at 200 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It protects government officials from liability if they are performing discretionary functions as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right must be "clearly established in a particularized sense" such that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fox*, 489 F.3d at 235; *accord Saucier*, 533 U.S. at 202.

Defendant makes two assertions regarding qualified immunity. His first assertion is that the Sixth Circuit has not addressed the impact of a domestic violence situation on exigent circumstances

---

[5]Plaintiff previously moved for summary judgment on this issue, which the Court denied (Court File No. 33). Plaintiff then filed a motion to alter or amend judgment (Court File No. 34). Because no judgment has been entered, the Court construes this Plaintiff's motion as one for reconsideration. Defendant testified the arrest occurred outside, which would invalidate Plaintiff's claim of a warrantless entry. Therefore, Plaintiff is not entitled to summary judgment and his motion for reconsideration is denied.

12

justifying a warrantless arrest inside a home. For this proposition, he relies on *Cannon v. Hamilton County*, 2007 WL 3238959 (E.D. Tenn. Nov. 1 2007). This proposition, however, is entirely unrelated to this case. In justifying his intrusion into the home, Defendant does not articulate any exigent circumstances, so a question about the scope of exigent circumstances cannot entitle him to qualified immunity. Defendant's memorandum states "there may be some dispute as to whether exigent circumstances exist to justify" the warrantless arrest, but never states what exigent circumstances he believes exist in this case (Court File No. 42, p. 13). To assert qualified immunity, Defendant must raise a plausible legal basis for the asserted legality of the warrantless entry. *Cummings*, 418 F.3d at 686 n.4. Defendant has not claimed exigent circumstances existed, so there is no question about the scope of exigent circumstances. Rather, Defendant claims the arrest occurred outside the house, which is a factual question unconnected to qualified immunity analysis.

Defendant also bases his assertion of qualified immunity on a state statute, which specifies that, when an officer has probable cause to believe a crime involving domestic has occurred, "the preferred response of the officer is arrest." Tenn. Code Ann. § 36-3-619(a). Based on that statute and opinions of the Tennessee Attorney General, Defendant contends he is entitled to qualified immunity because a reasonable officer would not have known an in-house arrest was prohibited under these circumstances.

The qualified immunity analysis begins with *Payton*. *Payton*'s prohibition on warrantless and nonconsensual entries into a house to make an arrest is clearly-established law. *Cummings*, 418 F.3d at 687. In the Sixth Circuit, it is also clearly established that when someone is inside his home, police may not force him out to arrest him unless they have a warrant, consent, or exigent circumstances. *See Saari*, 272 F.3d at 809 (citing *Morgan*, 743 F.2d at 1166). Thus, it is clearly

13

established law that Defendant could not enter Plaintiff's house to arrest him in the absence of a warrant, consent, or exigent circumstances.

Defendant, however, essentially contends the state statute would confuse a reasonable officer by suggesting arrests are proper without regard to whether the officer could legally enter the home to arrest a suspect. Defendant points to three opinions of the Tennessee Attorney General discussing the statute, and the Court reviewed four other opinions mentioning the statute. All the opinions state officers may make warrantless arrests when there is probable cause. None of the opinions makes any reference to the United States Constitution, the Fourth Amendment, or the right of people to be free of unlawful searches and seizures in their homes. These omissions appear to be a significant failing of the Tennessee Attorney General's opinions.

Defendant's reliance on the statute as a defense to a warrantless entry claim appears to be a first in Tennessee. Typically, defendant officers rely on the statute to support the lawfulness of an arrest but rely on exigent circumstances to justify their entrance into a house. *Cannon v. Hamilton County*, 2007 WL 3238959, 2007 U.S. Dist. LEXIS 81407 (E.D. Tenn. Nov. 1, 2007); *Campbell v. Babaoglu*, 2007 WL 2491826, 2007 U.S. Dist. LEXIS 24538 (E.D. Tenn. Apr. 2, 2007); *Barr v. Kyle*, 2005 U.S. Dist. LEXIS 6973 (E.D. Tenn. Jan. 18, 2005); *see also Thacker*, 328 F.3d at 256 (same situation involving Ohio law). The Court has been unable to find any case in which an officer claimed a preferred or mandatory arrest policy governed the constitutionality of a house entry.

The Supremacy Clause in the United States Constitution dictates that the Constitution is the supreme law of the land, any law of the state notwithstanding. U.S. Const. art. VI cl. 2. Moreover, it is clear that violations of federal rights under § 1983 do not arise from violations of state law. *See*

*Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Lewellen v. Metropolitan Gov't*, 34 F.3d 345, 347 (6th Cir. 1994); *Wagner v. Higgins*, 754 F.2d 186, 190 (6th Cir. 1985) (quoting *Cooper v. California*, 386 U.S. 58, 61 (1967)) ("The question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment.").

Based on these considerations, the Court concludes a reasonable officer would know of the federal constitutional protections of a person in his house and would know that federal constitutional rights are not altered by state statutes. Accordingly, Defendant is not entitled to qualified immunity for his alleged unlawful entry into Plaintiff's house to arrest him.

### 3. *Search of the House*

The warrantless entry into the house is not Plaintiff's only warrantless entry claim. After Plaintiff was arrested, Defendant allegedly went back into the house and looked through every room in Plaintiff's house to find Dustin. Defendant was inside the house for about 10 minutes before being transported to the jail, according to Plaintiff's amended complaint, which includes among its allegations that Defendant engaged in an unreasonable search. Defendant does not address the search in his motion for summary judgment nor in his reply brief, even though Plaintiff raised the issue in his response brief. Defendant has not suggested the search for Dustin was a search incident to an arrest, nor would the facts seem to support such a claim. *See United States v. Stover*, 474 F.3d 904, 911 (6th Cir. 2007) (quoting *Maryland v. Buie*, 494 U.S. 325, 334 (1990)). Rather, Defendant placed Plaintiff in a police car and then went searching for Dustin in the house. Such a warrantless entry for the purpose of arresting a suspect is specifically prohibited by *Payton*. Thus, Plaintiff maintains a claim for an unlawful entry and search of Defendant's search of his home.

## C. Excessive Force

Defendant seeks summary judgment on Plaintiff's claim that Defendant used excessive force to arrest him. Claims of excessive force are analyzed under a reasonableness standard based on "the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). The Court must examine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.*; *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007). This requires balancing Plaintiff's Fourth Amendment interests against the government's interests. *Graham*, 490 U.S. at 396; *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). In evaluating those interests, the Supreme Court has directed courts to look at factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Shreve v. Jessamine County Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006); *Burchett*, 310 F.3d at 944.

There is a "built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Graham*, 490 U.S. at 396; *accord Saucier v. Katz*, 533 U.S. 194, 205 (2001); *Burchett*, 310 F.3d at 944. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Graham*, 490 U.S. at 396. The reasonableness inquiry allows for the fact that police officers must often make split-second judgments about the necessary amount of force. *Id.*

Plaintiff's complaint alleges Defendant slapped a lit cigarette from his mouth. Defendant disputes this, and Plaintiff produced no evidence it occurred.[6] Plaintiff's other allegations, also

---

[6]Specifically, Plaintiff's affidavit does not describe these events.

16

contained in the complaint and lacking in evidentiary support, are that Defendant forcibly grabbed his arm and wrestled for his other arm. Even if these claims were supported by evidence in the record, they would not lead to a finding of excessive force. Grabbing a suspect's arms is a normal part of arresting someone. There is no allegation of any force being used after Plaintiff was arrested and no allegation of injury to Plaintiff. Accordingly, the Court concludes Plaintiff's excessive force claim must be dismissed.

Similarly, Plaintiff's state law claim of assault must fail because Defendant was entitled to use "reasonably necessary" force to accomplish the arrest. Tenn. Code Ann. § 40-7-108.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** the motion for summary judgment and will **DISMISS** Plaintiff's claims for false arrest, excessive force, and assault. The Court also will **DENY** Plaintiff's motion to alter or amend the judgment.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**