UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ROY L. DENTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:07-CV-211 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| STEVE RIEVLEY ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM

Before the Court are the following motions filed by pro se Plaintiff Roy L. Denton ("Mr. Denton"):

1. Motion for an order of contempt against Defendant Steve Rievley ("Defendant") or, in the alternative, a motion for extraordinary relief (Court File No. 152);

2. Motion for judgment as a matter of law or, in the alternative, a motion for a new trial (Court File No. 153);

3. Motion for an expedited hearing on these issues (Court File No. 164).

Having considered the arguments of Mr. Denton and the responses offered by Defendant (Court File Nos. 158, 161, 169), and after having carefully considered the applicable law, the Court, for the reasons stated below, will **DENY** all three of Mr. Denton's motions (Court File Nos. 152, 153, 164).

It is understandable that a lay person such as Mr. Denton would find it frustrating the time it takes in federal court for motions to be decided. This no doubt is due in part to Mr. Denton's unfamiliarity with the federal legal system and typical times for cases and motions to be resolved. It is not simply a matter of a litigant filing a motion and the Court immediately picking up that

motion and issuing a decision. The Court has a large number of cases, both civil and criminal, and the litigants in all of those cases would like the Court to immediately address their motions. That is not possible with the demands placed upon the Court's time by these many litigants and the necessity to thoroughly review the contents of the parties' filings, the record before the Court, the applicable law, exhibits and transcripts, and then give careful consideration to the position of the opposing parties. And with the possibility of a loss of liberty associated with criminal prosecutions, the Court is required to give priority to its criminal cases. The Court views it of the upmost importance that it strive to reach the most correct result possible with respect to each matter that comes before the Court. In Mr. Denton's case, this matter presents serious and complex issues which required a more thorough and detailed review on the part of the Court than is required in many cases.

I.   **Factual Background/ Procedural History**

Mr. Denton brings this action seeking damages under 42 U.S.C. § 1983 without the benefit of the assistance of an attorney. Specifically, Mr. Denton alleges Defendant violated his Fourth Amendment rights by (1) arresting Mr. Denton inside of his home without a warrant and (2) conducting an unreasonable search and seizure inside Mr. Denton's home.

According to testimony provided at trial, Defendant, who is a police officer for the city of Dayton, Tennessee, was working an overnight shift when he was dispatched to the police station at approximately 1:39 a.m on September 9, 2006. There he met with Brandon Denton ("Brandon"), Mr. Denton's youngest son, who alleged he was the victim of a domestic violence incident. Brandon told Defendant his father and brother, Dustin Denton ("Dustin"), attacked Brandon at the Denton

residence. Specifically, Brandon told Defendant his brother, Dustin, started beating him up when his father, Mr. Denton, grabbed him by the neck and strangled him. Allegedly, Mr. Denton's wife, Brandon's step mother, was also at the home and was involved in the assault. Brandon also reported that his eyeglasses were broken during the fight and remained at the home. Defendant observed red marks on Brandon's neck and abrasions on Brandon's arms and forehead. Defendant also stated he spoke with Brandon's coworker who informed him Brandon did not have any injuries earlier in the evening while at work at Taco Bell. Brandon then informed Defendant that Mr. Denton and Dustin remained at the Denton residence, where he stated the two had been consuming alcohol. According to Defendant, Brandon also stated there were weapons in the home.

As a result, Defendant drove to the Denton residence at approximately 2:13 a.m., along with three other officers, Deputy Gerald Brewer, Officer Brian Malone, and Officer Jason Woody. At some point after their arrival, Mr. Denton instructed the four officers to get off of his property because they did not have a warrant. Mr. Denton testified he was standing at least three feet inside of his home and never stepped onto his porch at any time. Defendant and the other police officers, however, testified Mr. Denton came outside on his porch to meet the officers. Mr. Denton had a strong odor of alcohol about him and was belligerent toward the officers.

Nonetheless, Defendant attempted to question Mr. Denton about the alleged domestic assault incident. As he reached the porch, he noticed Brandon's broken eyeglasses lying on the porch, which in his opinion corroborated Brandon's story. Mr. Denton denied having a son named Brandon. From Mr. Denton's actions there was a concern Mr. Denton was intoxicated. Defendant was also concerned about the possible presence of weapons in the home. Because Defendant considered Mr. Denton to be a "primary aggressor" of the alleged assault, Defendant placed Mr. Denton under arrest.

3

Defendant testified Mr. Denton then turned away from him and attempted to go back in the house. Mr. Denton, however, argued Defendant arrested him while he was still inside his home. Both agree Mr. Denton was detained and placed in Officer Jason Woody's patrol car, who took Mr. Denton to jail at approximately 2:18 a.m.

Although Mr. Denton was taken to the police station by one of the officers, Defendant, Officer Malone, and Deputy Brewer remained at the residence because they had not questioned the other suspect involved in the incident. Around the same time Mr. Denton was being detained, Deputy Brewer noticed another individual go across the living room area toward the back of the residence. Because he was aware there was a second suspect and he did not know if this individual was a potential threat, he announced himself to the individual while standing in the threshold of the home. When he did not get a response, he stepped further inside the home and again announced himself. Defendant, not knowing what prompted Deputy Brewer to go inside the Denton residence, followed Deputy Brewer inside to provide back-up.

Once inside, the officers found Dustin rummaging through a duffle bag. Deputy Brewer commanded Dustin to take his hands out of the duffle bag, but Dustin ignored the order and continued to rummage through the duffle bag. As a result, Defendant drew his weapon and subsequently handcuffed Dustin.

Once Dustin was secured and Defendant and the other officers returned to the front of the house, Defendant testified he called the police station to speak with Brandon who allegedly asked Defendant to retrieve his personal items from the home (*see* Court File No. 166, Tr. at 26:18-20). According to Defendant, Brandon asked him to retrieve his Taco bell name tag, hat, and apron, as well as a notebook (*id*. at 26:24-25). Brandon told Defendant where these items were located. Defendant testified he only retrieved items belonging to Brandon, and he did not seize any items

4

belonging to Mr. Denton. At all times Defendant was present in the home, Dustin remained in his custody.

The first trial in the matter took place beginning on April 12, 2010; however, this trial resulted in a hung jury. The case was retried beginning on August 23, 2010, and the jury reached a verdict in favor of the Defendant on both claims. Mr. Denton called as witnesses himself, Chris Sneed, Brian Malone, Jason Woody, and Brandon Denton. He introduced into evidence the affidavit of complaint of Brandon and a photograph of Brandon taken at the time the complaint was made. Defendant called as witnesses Jason Woody, Brian Malone, Gerald Brewer and himself.

## II. **Motion for an Order of Contempt**

Mr. Denton moves this Court to find Defendant in contempt for allegedly giving false testimony under oath and/or for violations of 18 U.S.C. §§ 1621 and 1623 (Court File No. 152). Mr. Denton alleges during the first and second trials in this matter, Defendant knowingly provided false testimony when Defendant stated he used his cellular phone to call Brandon, who was still at the police station, in order to search for and retrieve personal items belonging to Brandon from Mr. Denton's residence (*id.*). Mr. Denton urges the Court to review Defendant's phone records, which Mr. Denton states prove the telephone conversation never took place (Court File No. 152-1.). These phone records were in the possession of Mr. Denton during the second trial, and Mr. Denton had the opportunity to question Defendant regarding them when Defendant testified. Mr. Denton was unable to introduce them into evidence because he was unfamiliar with the governing Federal Rule of Evidence and the mechanism for introducing such evidence. However, it was evident to the jury Mr. Denton had some records which, at least in the opinion of Mr. Denton, contradicted Defendant's testimony on this point.

5

Since the records were not introduced into evidence and are not a part of the record, the Court had no basis for concluding Defendant testified untruthfully while under oath. Moreover, given the fact the jury knew about these records, although not the contents, and the fact Defendant's testimony did not obstruct the Court's ability to conduct orderly proceedings, a finding of contempt would be unwarranted.

### A. Standard of Review

The contempt power is a part of the Court's inherent and continuing authority to enforce its orders, protect the authority and dignity of the court, and assure the administration of justice. *See Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450, 31 S. Ct. 492, 501, 55 L. Ed. 797 (1911) ("The power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law"); *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590-91 (6th Cir. 1987). Typically, the Court will use its contempt power if a party has violated an order of the Court.

The movant in a civil contempt proceeding bears the burden of proving by clear and convincing evidence the nonmoving party "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Elec. Workers Pension Trust Fund of Local Union # 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citing *Cincinnati Bronze*, 829 F.2d at 591); *see also Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991). A respondent to a civil contempt motion may defend on the basis compliance is impossible or the respondent took all reasonable steps within its power to achieve substantial compliance with the Court's order. *See Gary's Elec. Serv.*, 340 F.3d at 379.

"In order to punish perjury in the presence of the court as a contempt[,] [however,] there must be added to the essential elements of perjury . . . the further element of obstruction of the court

in the performance of its duty." *United States v. Arredondo*, 349 F.3d 310, 317 (6th Cir. 2003) (citing *Ex parte Hudgings*, 249 U.S. 378, 383 (1919)); *but see Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 740 (7th Cir. 1999) (finding the oath does not amount to an order of the Court). All perjured testimony does not necessarily obstruct the judicial process. *Arredondo*, 349 F.3d at 317. This is because "the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the factfinding tribunal must hear both truthful and false witnesses." *Id.* Although "the natural tendency of all false testimony is to mislead the finder of fact, . . . this does not, as such, render it contemptuous." *Id.*

**B.     Discussion**

In this case, the Court does not find such extraordinary circumstances to hold Defendant in contempt. While the Court understands Mr. Denton's deep seated belief Defendant lied under oath, such a belief is not sufficient to invoke the power of a court of law to hold someone in contempt. In many trials where there are conflicting stories about the facts, the opposing party often concludes the opposing witnesses lied under oath. Even in circumstances where it would appear that a witness did lie, the law does not allow this Court to institute contempt proceedings against such a witness absent more egregious circumstances. Thus, even if Defendant provided false testimony, which has not been unequivocally established to the Court, Mr. Denton is reminded it is the duty of the opposing party to demonstrate that untruthfulness to the jury; then, it is the duty of the jury to weigh conflicting evidence. It is not the role of the courts to police trials to ensure that every witness' statements are absolutely true. It is fundamentally the role of the litigants themselves to point out unreliable, mistaken and perjurious testimony to the court and the jury. The litigants are in possession of the evidence and have much more knowledge of the facts of a case than a trial judge could ever have. That was the case here. Mr. Denton had possession of the documents he claims

show Defendant was untruthful, and he had the ability to question Defendant closely using these very documents. Accordingly, the Court declines to hold Defendant in contempt. The Court also finds it would be improper and presumptuous to refer the matter to the United States Attorney's office for investigation, as the Court has not been presented with any proof that Defendant perjured himself during the trial. Of course Mr. Denton retains the right to utilize this avenue to continue to pursue his accusation on his own if he so chooses.

Furthermore, 18 U.S.C. §§ 1621 and 1623 do not provide the Court with authority to sanction Defendant, and they do not create a private cause of action under which Mr. Denton may seek punishment for Defendant. *See e.g., Schied v. Ward*, No. 09-12374, 2009 WL 5171839, at *5 (E.D. Mich Dec. 22, 2009); *see also Jones,* 188 F.3d at 740 ("To hold a witness liable in money damages merely because he or she testified falsely at trial would violate the long-standing common law rule that parties and witnesses are immune from subsequent damages liability for their testimony in judicial proceedings). These statutes are criminal statutes which may only be used by the Government. Thus, the Court will **DENY** Mr. Denton's motion for contempt against Defendant (Court File No. 152).

### III.    Motion for Judgment as a Matter of Law or New Trial

Mr. Denton also moves this Court to grant him judgment as a matter of law or, in the alternative, a new trial (Court File No. 153). In his motion, Mr. Denton alleges "Defendant entered [Mr. Denton's] home . . . without a warrant, . . . without consent, and . . . without any exigent circumstances" (*id.* at 2).[1] Specifically, Mr. Denton asserts no reasonable jury could have found

---

[1] The Court specifically notes Mr. Denton does not address his first claim presented at trial that Defendant unlawfully arrested him inside his home in his motion for judgment as a matter of

8

Defendant did not conduct an unreasonable search and seizure of Mr. Denton's residence. Instead, Mr. Denton inexplicitly states the jury must have erroneously relied on (1) "the jury instruction regarding 'common authority'" which instructed the jury to determine if Defendant had consent to search for and seize items belonging to Brandon or (2) the alleged false testimony of Defendant regarding his telephone call to Brandon (*id.*).

### A. Standard of Review

Rule 50 of the Federal Rules of Civil Procedure states "if a party has been fully heard on an issue during a jury trial and the [C]ourt finds [] a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [the] issue, the [C]ourt may: (a) resolve the issue against the party; and (b) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on [the] issue." Fed. R. Civ. P. 50(a)(1). A court should review "a Rule 50(b) motion based on the sufficiency of the evidence." *Williams v. Commonwealth of Kentucky*, 124 F.3d 201 (table), No. 9505928, No. 95-5988, 1997 WL 561369, at *4 (6th Cir. 1997). In addition, the evidence should be viewed in favor of the nonmoving party, and the Court should give the nonmoving party the "benefit of all reasonable inferences." *United States v. Alpine Indus., Inc.*, 352 F.3d 1017, 1022 (6th Cir. 2003); *K&T Enter., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175-76 (6th Cir. 1996). Therefore, in order for Mr. Denton to succeed, he must show "no reasonable juror could have found for the nonmoving party." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078 (6th Cir. 1999).

In the alternative, Mr. Denton moves this Court for a new trial pursuant to Fed. R. Civ. P.

---

law/ motion for a new trial (Court File No. 153). Therefore, Mr. Denton does not seem to contest the jury verdict on this ground.

59. Under Rule 59, this Court may grant a new trial only "when a jury has reached a 'seriously erroneous result as evidenced by (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 405 (6th Cir. 2006) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)). However, this Court "[is] not free to reweigh the evidence or set aside the jury verdict merely because the jury could have drawn different inferences or conclusions." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000) (referencing *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)).

B.  **Discussion**

Mr. Denton argues the evidence at trial demonstrates Defendant entered Mr. Denton's home without a warrant, searched Mr. Denton's home for various items belonging to Brandon, and seized items from Mr. Denton's home in violation of Mr. Denton's Fourth Amendment rights (Court File No. 153 at 3). Viewing the evidence in favor of Defendant, as the Court must, and giving Defendant the benefit of all reasonable inferences, the Court finds that Mr. Denton's arguments must fail. It is clear after reviewing the evidence that the verdict reached by the jury was fair and reasonable. Even had the Court concluded another decision was also reasonable, reversing the jury's verdict would be unwarranted. Indeed, this Court may not "set aside the verdict [even if] it believes [] another outcome is more justified." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007).

1.  **Warrantless Entry/Search of Mr. Denton's Residence**

The Fourth Amendment to the United States Constitution guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Indeed, searches and seizures conducted without a warrant are considered to be "presumptively unreasonable." *Payton v. New*

*York*, 445 U.S. 573, 586 - 88 (1980). Because of the expectation of privacy in one's home, "the Fourth Amendment [also] generally prohibits the warrantless entry of a person's home, whether to make an arrest or search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

### a. Exigent Circumstances

"Warrantless entries are permitted under exigent circumstances, [however,] which 'exist where there are real and immediate and serious consequences that would certainly occur were a police officer to postpone action to get a warrant." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 548 (6th Cir. 2003) (citing *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)). There are three types of circumstances which typically constitute exigent circumstances: "(1) when the officers were in hot pursuit of a fleeing suspect; (2) when the suspect represented an immediate threat to the arresting officers and public; [and] (3) when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." *Ewolski*, 287 F.3d at 501 (citing *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992)); *see also United States v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990) (explaining a "warrantless entry will be sustained when the circumstances then extant were such as to lead a person of reasonable caution to conclude that evidence of a . . . crime would probably be found on the premises and [] such evidence would probably be destroyed").

Although Mr. Denton argues exigent circumstances did not exist at the time Defendant made a warrantless entry into Mr. Denton's home,[2] viewing the evidence in favor of Defendant and giving Defendant the benefit of all reasonable inferences, the Court finds the evidence strongly suggests

---

[2]Mr. Denton argues exigent circumstances did not exist, in part, because Defendant and Officer Malone could not articulate the meaning of exigent circumstances during trial. This is irrelevant to the issue.

11

otherwise. Defendant testified during trial he only entered Mr. Denton's home to provide back-up when he saw Deputy Brewer enter the home after observing another person in the home (Court File No. 161 at 4). *See e.g., United States v. Morgan*, 743 F.2d 1158, 1163 (6th Cir. 1984) (stating "cursory safety checks" are a recognized exception to the warrant requirement). Based on the information provided to the officers, they had reason to know or suspect that a short time before their arrival at the residence, a heated argument had taken place, violence had occurred, and alcohol had been consumed. They also had reason to know or suspect that firearms were in the house, and that Dustin and Mrs. Denton, who were also alleged to be involved in the assault, remained in the residence. They would also have known that domestic disputes are inherently dangerous for responding law enforcement officers.

Indeed, Dustin, Brandon's brother, was found rummaging through a duffle bag when the officers entered the house. When the officers ordered him to remove his hands from the bag, he refused and he was non-compliant. It is evident from Defendant's testimony he believed this person may have posed an immediate threat to the officers, and they had reasonable and legitimate concerns that Dustin may have been searching for a weapon. *See Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (explaining a protective search is justified where officers believed there was another suspect in the home and there was reason to believe the suspect was intoxicated and possibly armed).

At trial, Mr. Denton did not contest that the officers saw a person move within the house in their view, that the officers entered the house to secure this person, that the officers had reason to fear for their safety, that guns were present in the house, that a heated argument had taken place, that there had been some type of altercation, that alcohol had been consumed, and that Dustin was rummaging through a bag. Given the testimony of the first officer to enter the home, Deputy Gerald Brewer, and the testimony of Defendant, a reasonable jury would have been clearly justified in

determining that under such circumstances, the officers, including Defendant, acted reasonably and prudently in entering the home to ensure no one in the home posed a danger to the officers. It is clear that the jury could have made an intermediary determination that no violation of Mr. Denton's rights under the Fourth Amendment occurred by the officers' entry into the residence. This finding by the jury would have meant that exigent circumstances existed at the time Defendant entered Mr. Denton's home. The evidence before the jury more than supports such a finding.

### b. Third Party Consent

Mr. Denton next argues his rights under the Fourth Amendment were violated by Defendant retrieving Brandon's possessions, even if Defendant had permission to do so from Brandon. Mr. Denton bases this argument on his initial order to the officers to leave his property, and he contends any alleged permission given by Brandon was trumped by his initial refusal to even allow the officers to be at his home. Indeed, the Supreme Court has held, if an individual "with self-interest in objecting [to a search] is in fact at the door and *objects*, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not involved to take part in the colloquy, loses out." *Georgia v. Randolph*, 547 U.S. 103, 121 (2006). In other words, if a " physically present co-occupant" expressly refuses consent, the search is invalid even if another occupant consents. *Randolph*, 547 U.S. at 106. The "refusal must be [] plain in order for that refusal to trump the consent of another resident with common authority over the premises." *United States v. Stokely*, - - - F. Supp.2d - - -, 2010 WL 3087409 at *23 (E.D. Tenn. Aug. 5, 2010). In addition, "police officers are not permitted to balance or weigh one co-tenant's consent against another co-tenant's non-consent; if one occupant objects, the police cannot enter a residence, without a warrant, based on the consent of another occupant." *United States v. Tatman*, No. 09-3117, 2010 WL 3724593, at *6 (6th Cir. Sept. 13, 2010).

Nevertheless, in this case, Mr. Denton mistakenly relies on *Georgia v. Randolph*, 547 U.S. 103 (2006) (Court File No. 153 at 8). It is clear from the evidence Defendant did not enter Mr. Denton's residence on the grounds he received voluntary consent from Brandon. Rather, Defendant entered the home lawfully because he was concerned about the presence of another potential suspect and the safety of himself and his fellow officers. While lawfully inside of the home, Defendant spoke to Brandon and was authorized to retrieve Brandon's possessions. Defendant took nothing that belonged to Mr. Denton, only possessions of Brandon.

Furthermore, even if the retrieval of Brandon's items was not directly related to the protective sweep which led Defendant and the other officers into Mr. Denton's residence, such retrieval of items was still reasonable. *But see Segura v. United States*, 468 U.S. 796 (1984) (explaining "conduct must be strictly circumscribed by the exigencies which justify its initiation"); *Michigan v. Clifford*, 464 U.S. 287, 294 (1984) (explaining in that case, "circumstances that justify a warrantless search for the cause of a fire may not justify a search to gather evidence of criminal activity once that cause has been determined"). Here, Mr. Denton was no longer physically present to object when the issue of retrieving Brandon's personal belongings arose. *See Stokely*, 2010 WL 3087409, at *23 (explaining the Supreme Court drew a "fine line" in *Randolph* between cases where a plaintiff was detained nearby, but outside of the home, when a search occurred, and cases where one co-occupant grants consent and another refuses at the time the search occurred); *see also United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007) (suggesting an individual must be "invited to take part in the threshold colloquy" regarding the issue of a search). Moreover, Mr. Denton was detained at the police station, and Defendant was already lawfully inside the Mr. Denton's residence when the retrieval of Brandon's possessions took place. Accordingly, this Court finds Mr. Denton's previous refusal to allow the officers to be on his property "lost its force," not simply because Mr.

Denton had been taken into custody, but because the existence of exigent circumstances nullified his previous objection. *See e.g., United States v. Henderson*, 536 F.3d 776, 783-84 (7th Cir. 2008).³ "[N]othing in the [*Randolph*] opinion suggests the [Supreme] Court was creating a rule of continuing objection," even in the face of such intervening circumstances. *Id.*

Finally, none of the items retrieved belonged to Mr. Denton, so the retrieval of the items did not harm him at all and he had no standing to object to their removal. Even though Mr. Denton had a reasonable expectation of privacy in his own residence, that expectation of privacy was overcome when Defendant and the other officers entered the home under exigent circumstances. No evidence was present that Defendant conducted a search of the home, went rummaging throughout the home, or entered any part of the home he could not have lawfully entered to ensure there were no other persons in the home who might pose a danger to him and/or the other officers. The only conceivable injury Mr. Denton could have suffered was that Defendant may have remained in the home for slightly longer than he should have. Any injury thus sustained would have been de minimus. The jury would have been justified in finding that any such speculative injury was insufficient to warrant a verdict in Mr. Denton's favor.

However, even if the jury did not reach such result, it is not at all clear Brandon did not have the authority to authorize Defendant to be in Mr. Denton's home after the protective sweep took place. The law is clear that the prohibition against warrantless searches of residences "does not apply where the police obtain voluntary consent from the individual whose property is searched or

---

³The law is not settled on this issue. As stated in *Tatman*, there is a circuit split, and the Sixth Circuit has not weighed in on the issue, regarding whether an objecting co-tenant's objection to a warrantless entry trumps the subsequent consent of a third party after the objecting co-tenant is taken into policy custody and removed from the home. *Tatman*, 2010 WL 3724593, at *23 (Kennedy, J., concurring in part and dissenting in part). However, here, there is the added factor of exigent circumstances.

from a third party who possesses common authority over the premises." *United States v. Grayer*, 232 F. App'x 446, 448 (6th Cir. 2007). Defendant testified at trial that before he exited the Denton residence, he called the police station to speak with Brandon who asked Defendant to retrieve some of his personal items from Mr. Denton's home. In addition, as stated above, Mr. Denton's initial refusal to allow the officers on his property became null immediately when exigent circumstances arose. From the information in the possession of Defendant, it was reasonable for Defendant to conclude Brandon lived in the residence and had equal authority to authorize the slight stay in the residence necessary to retrieve Brandon's property. Therefore, the applicable law and the evidence presented support the jury's verdict in favor of the Defendant.

### 2. Jury Instructions

Mr. Denton finally argues he is entitled to a new trial because the Court should not have included a jury instruction regarding "common authority" or third-party consent (Court File No. 153). "A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Arban v. West Publ'g Corp.,* 345 F.3d 390, 404 (6th Cir. 2003). It is not enough for Mr. Denton to show there were "deficiencies" in the instructions. *Rivet v. State Farm Mut. Auto. Ins. Co.*, 316 F. App'x 440, 446 (6th Cir. 2009).[4]

---

[4]Under Rule 51 of the Federal Rules of Civil Procedure, a party must be given the opportunity to object to the jury instructions before they are presented to the jury. While at trial, Mr. Denton specifically objected to certain statements found in the "unlawful search" instruction regarding the issue of "common authority." Mr. Denton asked the Court to remove from the jury instructions (1) Defendant's argument Brandon gave Defendant consent to enter Mr. Denton's residence and search for Brandon's personal belongings; (2) the instruction which stated a "police officer . . . does not violate the Fourth Amendment if voluntary consent was obtained . . ."; and (3) the instruction defining common authority found in the fourth paragraph. Mr. Denton felt these instructions were prejudicial to his case because he did not give consent to Defendant to search his home.

Mr. Denton contends the Court and the jury erroneously relied on the "common authority" instructions because (1) Defendant allegedly perjured himself when he claimed he contacted Brandon to receive permission to search the residence from Brandon Denton, and (2) even if Defendant had consent from Brandon, Mr. Denton's lack of consent trumped any common authority (Court File No. 153).

The Court has already addressed both of these issues in this memorandum above. In regards to Defendant's alleged false testimony, it is the obligation of the jury, as factfinder, to sift through truthful and false testimony. During trial, Mr. Denton failed to introduce into evidence the phone records (*see* Court File No. 152-1) which, according to Mr. Denton, show Defendant did not make any phone calls while at the Denton residence. It is uncontested however that the items belonging to Brandon were retrieved from the residence and taken to the police station to be retrieved by Brandon. How Defendant would know what to retrieve or have any interest in retrieving them without having talked to Brandon is not explained. From these facts the jury could conclude that in fact Defendant did speak to Brandon as he testified. While Mr. Denton did call Brandon as a rebuttal witness to testify that Defendant did not contact him via cellular phone while Brandon remained at the police station (Court File No. 168, Tr. at 4), the jury also heard that at the time of the trial Mr. Denton and Brandon had reconciled and Brandon was living in a shed on Mr. Denton's property and was being supported by Mr. Denton. This would have been additional reason for the jury to believe Defendant and disbelieve Brandon.

In regards to the issue of whether Mr. Denton's initial order to the officers to get off his property trumped Brandon's later, post-lawful entry consent, the Court again acknowledges Mr.

Denton's reliance on *Georgia v. Randolph*.[5] However, Mr. Denton never provided the Court with any instruction along these lines. He only objected to the Court giving an instruction which explained Defendant's theory of the case. In addition, as already explained, the Court finds this case to be distinguishable from the *Randolph* decision. Therefore, an instruction regarding Mr. Denton's previous refusal would have been nonsensical in light of the evidence demonstrating exigent circumstances. Therefore, even had he requested such an instruction, it would have been improper to give it because it was not supported by the evidence.

From the facts in this case, it is clear that such an instruction regarding "common authority" was warranted and was not error. In addition, it is clear the jury was able to weigh the evidence to decide which account of the facts to believe. For these reasons, the Court did not err in presenting Defendant's theory of the case through the "common authority" jury instructions. Accordingly, this Court finds a new trial is not necessary in this case and the Court will **DENY** Mr. Denton's motion (Court File No. 153).

**IV.    Conclusion**

For the above stated reasons, the Court will deny Mr. Denton's motion for an expedited evidentiary hearing (Court File No. 164), Mr. Denton's motion for judgment as a matter of law, or in the alternative, a motion for a new trial (Court File No. 153), and Mr. Denton's motion for an order of contempt against Defendant (Court File No. 152).

---

[5] In his motion, Mr. Denton states he "made it perfectly clear that he was not consenting to anything, no search, no entry not even consenting them [police] to even being there on his property without a warrant" (Court File No. 153 at 8).

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**